**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **THE HAWTHORNE GARDENING COMPANY** and **THE HAWTHORNE COLLECTIVE, INC.** | **CASE NO.**_____ |
| **Plaintiffs**, | |
| vs. | **JURY TRIAL DEMANDED** |
| **JW ASSET MANAGEMENT, LLC**, TERRASCEND CORP., and **JASON G. WILD** | |
| **Defendants** | |

**COMPLAINT FOR RELIEF, INCLUDING INJUNCTIVE AND OTHER RELIEF**

## I.     PRELIMINARY STATEMENT

1.      This is a case about Defendants' anticompetitive conduct designed to ruin Plaintiffs' $175 million investment in a budding cannabis business.  Defendant Jason Wild is the Executive Chairman of Defendant TerrAscend, a cannabis operator in several U.S. states and in Canada.  Wild also runs Defendant JW Asset Management, LLC ("JWAM"), an investment firm that invests in the cannabis sector (among others) and owns more than 40% of Defendant TerrAscend.

2.      Plaintiffs, The Hawthorne Gardening Company and The Hawthorne Collective, Inc. (together, "Hawthorne"), have a strategic investment in RIV Capital Inc. ("RIV Capital" or "RIV"), another cannabis company.  RIV Capital's stated goal is to acquire cannabis businesses in the United States to build the world's premier house of brands for cannabis use.

3.      Hawthorne has provided $175 million in capital to support RIV's business objectives, with the funds restricted for use by RIV only for activities that are lawful in the

jurisdiction in which they occur.  As part of this relationship, RIV granted Hawthorne three seats on its Board of Directors, committed to future Hawthorne designees for election to the Board, and gave Hawthorne specific rights with respect to furthering RIV's business opportunities.

4.     In March 2022, RIV Capital announced an agreement to acquire Etain LLC and Etain IP LLC (together, "Etain"), one of 10 vertically integrated cannabis companies licensed in New York.  Hawthorne's investment helped fund the acquisition, which RIV Capital secured following a competitive sale process.  Hawthorne and RIV's investment will strengthen and expand Etain's presence in New York, including through plans to invest in four new dispensaries and to construct a new state-of-the-art indoor cultivation facility.  This will provide a strong foundation in a crucial market for Hawthorne and RIV's business plans in the United States. RIV Capital announced the final closing of the Etain deal on December 15, 2022.

5.     Defendant TerrAscend also expressed interest in buying Etain.  TerrAscend has a New Jersey cannabis license and retail stores in New Jersey, adjacent to New York, and in particular New York City.  On information and belief, TerrAscend wants, but does not have, a New York cannabis license.  And Etain has a cannabis license and retail stores in New York, including in New York City.  So when RIV Capital announced it had agreed to buy Etain, and that Hawthorne's investment would help fund the deal, Defendants tried to stop it.  They had the perfect vehicle:  Defendant JWAM has a controlling interest in Defendant TerrAscend, but also owns approximately 20% of RIV Capital's stock, more than any other shareholder.

6.     Defendants thus sought to leverage Defendant JWAM's position in RIV Capital to stop the Etain deal.  Defendant Wild pressured RIV Capital's Board to call off the Etain deal. He claimed that RIV Capital's relationship with Hawthorne and its purchase of Etain threatened his ability to "oversee and control" RIV Capital.  He threatened to purchase a New York hemp

license because, in his view, RIV Capital could not acquire Etain's cannabis license if one of its shareholders already held a hemp license.  He demanded confidential information regarding the deal.  He sued RIV Capital in Canada.  And he threatened a proxy contest to take over RIV Capital's Board—even though Defendant Wild also chairs Defendant TerrAscend's Board.

7.      In December 2022, Defendants Wild and JWAM initiated a proxy contest (set for June 2023) to try to remove the Hawthorne-nominated directors that serve on RIV Capital's Board.  Defendants hope to install their preferred directors to take control of RIV Capital, and are even seeking to launch an "investigation" into Hawthorne and its Board nominees.

8.      Upon information and belief, Defendant JWAM, RIV Capital's largest shareholder, is trying to disrupt the Etain deal and Hawthorne's relationship with RIV for Defendant TerrAscend's benefit.  Defendant JWAM, like Plaintiff The Hawthorne Collective, has investments in cannabis companies.  And Defendant TerrAscend is trying to develop expanding market opportunities in the cannabis space.

9.      Defendant Wild has acknowledged that he would like to disrupt the Etain deal because Defendant TerrAscend wants a New York cannabis license.  The numbers drive home where Wild and JWAM's priorities lie: Defendant JWAM owns approximately $159.4 million in TerrAscend stock, dwarfing its approximately $4.4 million interest in RIV Capital.

10.     Defendants' attacks on, and attempts to take control of, RIV Capital violate federal antitrust law.  Hawthorne thus brings this action to stop Defendants' illegal conduct before it causes irreparable harm, and to recover damages for the harm already caused.

## II.      PARTIES

11.     Plaintiff The Hawthorne Gardening Company, a wholly owned subsidiary of The Scotts Miracle-Gro Company ("ScottsMiracle-Gro") (NYSE: SMG), is incorporated under Delaware law and has its principal place of business in Port Washington, New York.  The

Hawthorne Gardening Company is a leading provider of nutrients, lighting, and other materials used in the hydroponic growing segment.

12.     Plaintiff The Hawthorne Collective, Inc. ("The Hawthorne Collective"), a wholly owned subsidiary of ScottsMiracle-Gro, is incorporated under Ohio law and has its principal place of business in Marysville, Ohio.  The Hawthorne Collective focuses on strategic minority investments in areas of the cannabis industry.  As stated above, Plaintiff The Hawthorne Gardening Company and Plaintiff The Hawthorne Collective, Inc. are collectively referred to as "Hawthorne."

13.     Defendant TerrAscend Corp. (CSE: TER:CNX) (OTC: TRSSF) ("TerrAscend") was incorporated under Ontario law in March 2017.  TerrAscend is a cannabis operator with vertically integrated operations in California, Michigan, New Jersey, and Pennsylvania, licensed cultivation and processing operations in Maryland, and licensed production in Canada. TerrAscend is listed on the Canadian Securities Exchange under the ticker symbol "TER:CNX" and on the OTC Markets under the ticker symbol "TRSSF."  In January 2023, according to *The Wall Street Journal*, TerrAscend had a market capitalization of $398.6 million, and its shares were trading at a value of $1.38 per share on the OTC Markets.

14.     Defendant JW Asset Management, LLC ("JWAM") is a Delaware limited liability company and has its principal place of business in Armonk, New York.  JWAM is an investment management firm focused in the healthcare and cannabis sectors.

15.     Defendant Jason G. Wild ("Wild") is the president and chief investment officer of Defendant JWAM, as well as the Executive Chairman of Defendant TerrAscend.  Upon information and belief, Mr. Wild resides in Armonk, New York.

### III.   JURISDICTION AND VENUE

16.   This action arises under the federal antitrust laws, including Sections 7 and 8 of the Clayton Act, 15 U.S.C. §§ 18, 19.

17.   Plaintiffs also seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

18.   This Court has jurisdiction under 15 U.S.C. §§ 15 and 26, as well as 28 U.S.C. §§ 1331 and 1337, in that it involves questions arising under federal law, including the federal antitrust laws.

19.   Venue is appropriate in this judicial district and division pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C. § 22.  A substantial part of the events or actions that give rise to these claims occurred within this judicial district and division.  In addition, Defendant JWAM has its principal place of business in this judicial district and division, Defendant Wild resides in this judicial district and division, and Defendants JWAM and Wild took the actions described in this Complaint on behalf of Defendant TerrAscend in this judicial district and division.

### IV.   SUBSTANTIVE ALLEGATIONS

#### The Hawthorne Collective and RIV Capital Inc.'s Partnership

20.   Plaintiff The Hawthorne Collective has a strategic investment in non-party, Toronto-based RIV Capital Inc. ("RIV Capital") (CSE: RIV) (OTC: CNPOF), a cannabis investment and acquisition firm with Class A subordinated voting shares listed on the Canadian Securities Exchange (CSE) under the ticker symbol "RIV" and on the OTC Markets under the ticker symbol "CNPOF."  In January 2023, according to *The Wall Street Journal*, RIV Capital had a market capitalization of $22.1 million, and its shares were trading at a value of $0.14 per share on the OTC Markets.

21.   RIV Capital actively manages investments in nine companies across the cannabis value chain from seed to sale.

22.     RIV Capital aims to acquire, invest in, launch, and/or develop United States assets to build a multistate cannabis operating and brand platform.

23.     In early 2021, RIV Capital announced its plans to pursue one of several material investments in, or acquisitions of, U.S.-based cannabis companies, noting that it believed it was uniquely positioned to take advantage of the developing opportunities in the United States.

24.     In August 2021, Plaintiff The Hawthorne Collective provided a $150 million convertible loan to RIV Capital.

25.     Plaintiff The Hawthorne Collective's investment is in the form of a six-year convertible note pursuant to the terms of a Convertible Promissory Note Purchase Agreement (the "Note Purchase Agreement," *see* Ex. 1) and a Convertible Promissory Note (the "Promissory Note" or the "Note," *see* Ex. 2).

26.     The Note accrues interest at 2.03% annually for the first two years and includes additional follow-on investment rights.

27.     As a condition of closing set forth in the Note Purchase Agreement, RIV Capital agreed to appoint three Hawthorne nominees to its Board of Directors.  RIV Capital nominated three Hawthorne directors in its circular to shareholders, and shareholders elected the Hawthorne nominees in September 2021.  Defendant JWAM voted in favor of the Hawthorne nominees.

28.     Subject to obtaining all applicable regulatory approvals, Plaintiff The Hawthorne Collective may convert the Note into common shares of RIV Capital upon the later of (i) two years following closing and (ii) the date on which federal laws in the United States are amended to allow for the general cultivation, distribution, and possession of cannabis.

29.     Upon conversion, and subject to various terms and conditions, Plaintiff The Hawthorne Collective would own approximately 42% of RIV Capital's shares.

30.     Plaintiff The Hawthorne Collective also entered into an Investor Rights Agreement with RIV Capital (the "Investor Rights Agreement," *see* Ex. 3, as amended, *see* Ex. 4), which provides for, among other things, customary registration rights, participation rights, certain standstill and transfer restrictions, and the right to nominate up to three directors to RIV Capital's Board.  Under this agreement, RIV Capital is required to support and solicit proxies for Hawthorne nominees to the Board of RIV Capital.

31.     Plaintiff The Hawthorne Collective and its affiliates (including Plaintiff The Hawthorne Gardening Company) agreed to present certain business opportunities in the cannabis sector to RIV Capital and to pursue such opportunities with RIV Capital.

32.     Plaintiff The Hawthorne Gardening Company is a party to the Investment Rights Agreement as the guarantor.

33.     Plaintiff The Hawthorne Collective and RIV Capital's strategic relationship creates opportunities for significant value creation and growth, including entry into new cannabis markets within the United States.

34.     To date, Plaintiff The Hawthorne Collective has provided $175 million in capital to RIV Capital under this convertible loan relationship.

35.     Defendants have been aware of Hawthorne's relationship with, and interest in, RIV Capital from the beginning.

### The Etain Transaction and Entry Into the New York-New Jersey Market

36.     RIV Capital is actively executing a strategy of acquiring or otherwise expanding investments in United States cannabis businesses, focusing first on the northeastern United States, with the objective of building the world's premier house of brands for use related to cannabis as federal and state regulatory developments continue to be implemented.

37.     On March 30, 2022, RIV Capital announced its agreement to acquire Etain, owners and operators of legally licensed cannabis cultivation and retail dispensaries in the state of New York.

38.     Etain, New York's only women-owned and operated cannabis business, is one of the state's original five medical cannabis license recipients and is one of only 10 approved vertically integrated operators.

39.     RIV Capital's agreement to acquire Etain (the "Etain Transaction") resulted from a competitive sale process for Etain's unique and highly coveted New York license.

40.     RIV Capital agreed to acquire Etain for approximately $247 million, payable through a combination of cash and newly issued Class A common shares of RIV Capital, portions of which were subject to, among other things, receipt of any required regulatory approvals, including from the New York Cannabis Control Board and the New York State Office of Cannabis Management.

41.     On or around April 22, 2022, RIV Capital announced its completion of the initial closing of the Etain Transaction.  Pursuant to the initial closing, RIV Capital acquired the non-regulated portion of Etain for approximately $198 million through a combination of cash and newly issued Class A common shares of RIV Capital.

42.     On or around November 21, 2022, RIV Capital announced that the New York Cannabis Control Board and the New York State Office of Cannabis Management approved Etain's change-of-control request for its New York cannabis license, meaning all regulatory approvals had been obtained to complete the Etain Transaction.

43.     On or around December 15, 2022, RIV Capital announced its completion of the final closing of the Etain Transaction.  Pursuant to the terms of the transaction, RIV Capital

acquired the remaining portion of Etain for approximately $42 million in cash and newly issued Class A common shares of RIV Capital.

44.     RIV Capital utilized the $150 million proceeds received from Plaintiff The Hawthorne Collective to finance the cash portion of the consideration payable in the Etain Transaction.

45.     To provide RIV Capital with additional financing support for the acquisition, Plaintiff The Hawthorne Collective agreed to advance RIV Capital $25 million at the time of the initial closing pursuant to rights existing under the convertible note investment.  In accordance with a newly issued convertible note, on or around April 22, 2022, Plaintiff The Hawthorne Collective completed its additional $25 million investment in RIV Capital.

46.     The Etain Transaction is part of the execution of Plaintiff The Hawthorne Collective's and RIV Capital's strategy, which includes pursuing the cannabis value chain as an operator of licensed cannabis cultivation and dispensary facilities in the United States.

47.     Etain has four operating dispensaries in New York, including its Manhattan flagship location and locations in Kingston, Syracuse and Yonkers.

48.     Etain's market includes New York and, in particular, the New York-New Jersey border.

49.     To strengthen and expand Etain's presence, RIV Capital plans to invest in four new dispensaries.  RIV Capital plans to support Etain's expansion of its Chestertown, New York cultivation and production infrastructure, which it expects to be completed by the second quarter of 2023.  RIV Capital also plans to support the construction of a new state-of-the-art indoor cultivation facility in Buffalo, New York.

50.     Plaintiff The Hawthorne Collective's investment in RIV Capital has not only enabled RIV Capital to execute on its past plans for Etain, but also will enable RIV Capital to execute on its future plans for Etain.

51.     RIV Capital's strategy and plan to grow Etain represents a significant step forward for both RIV Capital and Etain, and it will also establish an important foundation upon which Plaintiff The Hawthorne Collective can invest in the marketplace as the legal and regulatory environment for cannabis continues to evolve.

52.     Pursuant to Plaintiff The Hawthorne Collective's agreements with RIV Capital and their strategic relationship, Plaintiff The Hawthorne Collective also stands to benefit from having Etain and the New York-New Jersey market serve as a foundational building block of RIV Capital's platform.

### New York-New Jersey Cannabis Market

53.     New York first legalized cannabis for medical use in 2014.

54.     New York originally granted only five medical cannabis licenses—including one to Etain.  Etain remains one of only 10 approved vertically integrated operators.

55.     New York passed a law permitting recreational cannabis use in 2021 with retail sales for recreational use that began in 2022.

56.     New Jersey similarly allows medical cannabis use and permitted licensed operators to sell cannabis products for recreational use that began in 2022.

57.     New Jersey currently has 12 vertically integrated operators in the State.

### Defendants' Business Through TerrAscend Corp.

58.     Defendant JWAM is an investment firm with more than $1 billion in assets under management.  Defendant Wild is Defendant JWAM's President and Chief Investment Officer.

59.     On information and belief, Defendant JWAM is by far Defendant TerrAscend's largest shareholder, owning more than 40% of the company.  Given TerrAscend's reported market capitalization, JWAM's investment in TerrAscend is currently valued at approximately $159.4 million.

60.     Defendant TerrAscend has three New Jersey dispensaries, which operate under the name "The Apothecarium," located in Lodi, Maplewood, and Phillipsburg, New Jersey. Through Defendant TerrAscend's New Jersey operations, Defendant TerrAscend serves consumers in the New York-New Jersey market.  Defendant TerrAscend's August 2022 Investor Presentation states that it operates "adjacent to NYC" (New York City).  *See* Ex. 5 at 7.

61.     Defendant JWAM holds 33,733,334 of RIV Capital's issued shares (approximately 20%) and is RIV's largest shareholder.  At its reported market capitalization, Defendant JWAM's investment in RIV Capital is valued at approximately $4.4 million.

62.     Subject to any applicable legal restrictions, consumers that live near the New York-New Jersey border may purchase cannabis products from locations on either side of the border because the dispensaries are close in distance and the states do not have enough dispensary options to be distinct markets.

63.     Defendant TerrAscend's choice of locations evidences its desire to capture out-of-state consumers.  All of its New Jersey locations are near state borders.  Defendant TerrAscend's Lodi and Maplewood locations, for example, are accessible from major interstate highways and are within a short distance from the New York border.

64.     Defendant TerrAscend's New Jersey dispensaries are close in proximity to Etain's dispensaries.  TerrAscend's Lodi and Maplewood dispensaries, for example, are near the New York-New Jersey border and Etain's Manhattan and Yonkers locations.  Defendant TerrAscend's

Lodi dispensary, in particular, is less than 20 miles (a half-hour drive) from Etain's Manhattan location.  Similarly, Defendant TerrAscend's Maplewood dispensary is within 45 minutes of Etain's Manhattan and Yonkers locations, while Defendant TerrAscend's Phillipsburg dispensary is less than 90 miles from those locations.

65.     On information and belief, Defendant TerrAscend has previously tried and still hopes to obtain a New York cannabis license, but has been unsuccessful in doing so.

**Defendants' Interference Tactics Following TerrAscend's Failure to Acquire Etain**

66.     Without its own New York cannabis license, Defendant TerrAscend expressed an interest in acquiring Etain during or before Etain's competitive sale process.  While Defendant TerrAscend signed a non-disclosure agreement with Etain and received a confidential information memorandum during the competitive sale process, it did not acquire Etain.

67.     Defendants JWAM and Wild have demonstrated a pattern of interfering with RIV Capital's acquisition of Etain and its entry into the cannabis market, and have used JWAM's position as RIV Capital's largest shareholder to do so.

68.     Following announcement of the Etain Transaction, Defendant Wild began calling RIV Capital directors and managers, criticizing and challenging them for approving the Etain Transaction.  Wild held similar calls with leadership from The Hawthorne Collective and ScottsMiracle-Gro, attacking not only the Etain deal but Plaintiffs, their relationship with RIV Capital, and Plaintiffs' Board nominees.

69.     In connection with these calls, Defendant Wild demanded that RIV Capital back out of its commitments in the Etain Transaction.

70.     Wild also threatened a proxy contest to take control of RIV Capital's Board of Directors to remove Plaintiffs' Board nominees and to disrupt the Etain Transaction.

71.     Wild further suggested he would purchase a hemp license in New York to try to stop the Etain Transaction.  Wild claimed that New York law prohibits a company from acquiring a cannabis license if any of its shareholders already own a hemp license.  He thus suggested he could purchase a hemp license through Defendants TerrAscend and JWAM, and then use Defendant JWAM's ownership of RIV Capital shares to bar RIV Capital from purchasing Etain and, thus, Etain's cannabis license.

72.     On April 18, 2022, Defendants Wild and JWAM made significant and unlawful demands on the RIV Capital Board through a letter that purported to "oppose[]" the Etain Transaction (the "April 18th Letter").

73.     In the April 18th Letter, Defendants Wild and JWAM attacked not only the Etain Transaction but Plaintiff The Hawthorne Collective's relationship and contracts with RIV Capital.  Defendants Wild and JWAM claimed that Plaintiff The Hawthorne Collective had "compel[led] RIV's Board and management to enter into" the Etain Transaction, and indicated that the Etain Transaction and RIV Capital's agreements with Plaintiff The Hawthorne Collective "imped[ed]" Defendant JWAM's ability "to oversee and control management" at RIV Capital.

74.     Defendants Wild and JWAM demanded that RIV Capital hold off on closing any portion of the Etain Transaction without providing 10 business days' written notice to Defendant JWAM and allowing minority shareholders to vote on the transaction.

75.     Defendants Wild and JWAM also demanded that RIV Capital produce to them confidential documents related to the Etain Transaction—which could have resulted in the disclosure of confidential, competitive information being passed to TerrAscend.

76.     In discussions with RIV Capital personnel, Defendant Wild acknowledged that he would also like to stop the Etain Transaction to benefit Defendant TerrAscend and/or TerrAscend's efforts to obtain a New York cannabis license.  Defendants Wild and JWAM also threatened legal action against RIV Capital to stop or impede the Etain Transaction.

77.     RIV Capital responded to the April 18th Letter on April 20, 2022, disagreeing with Defendants Wild and JWAM's claims.

78.     On May 18, 2022, Defendant JWAM filed an application in the Ontario Superior Court of Justice Commercial List (the "Ontario Action") regarding the Etain Transaction and sought, among other things, an order requiring RIV Capital to purchase JWAM's shares of RIV Capital at a price that is several times their current market value.

79.     Defendant JWAM's court filing omitted any mention of its ownership interest in Defendant TerrAscend, that Defendant Wild, Defendant JWAM's President and Chief Investment Officer, is Defendant TerrAscend's Executive Chairman, or that Defendant JWAM's investment in Defendant TerrAscend dwarfs its investment in RIV Capital.  Defendant JWAM also did not disclose that Defendant TerrAscend had expressed interest in purchasing Etain.

80.     On May 30, 2022, RIV Capital sent a letter to Defendants JWAM and Wild in response to the Ontario Action and Defendants' other anticompetitive conduct, reiterating RIV Capital's view that Defendants JWAM and Wild's "objectives have nothing to do with RIV's best interests and everything to do with [their] best interests as an officer, director, and the largest shareholder of [Defendant] TerrAscend."

81.     On June 6, 2022, counsel for Hawthorne and ScottsMiracle-Gro sent a letter to Defendants TerrAscend, Wild, and JWAM regarding Defendants' unlawful efforts to interfere

with Plaintiffs' interests in RIV Capital and Defendants' efforts to impede RIV Capital's efforts to enter the market.

82.     On June 8, 2022, RIV Capital sent a letter to Defendant TerrAscend's Lead Independent Director to inform TerrAscend's Board of Directors of the actions of Defendants Wild and JWAM against RIV Capital.  RIV Capital explained that Defendants Wild and JWAM had a conflict of interest; that they had been trying to leverage their ownership in RIV Capital to Defendant TerrAscend's benefit; that they continued to make threats of anticompetitive and illegal action; and that their conduct raised anticompetitive and antitrust concerns that could cause legal problems not only for RIV, but for Defendants TerrAscend and JWAM.

83.     On June 22, 2022, TerrAscend's Chief Legal Officer sent a letter in response to RIV Capital's June 6 letter, disputing that TerrAscend had acted improperly.

84.     RIV Capital and Defendants JWAM and Wild litigated the Ontario Action during the summer and early fall of 2022.  The Ontario Action was submitted to the Ontario Superior Court of Justice in September 2022.  The court has not yet issued a decision.

85.     Notably, Defendant Wild submitted an affidavit in the Ontario Action stating that a primary objection to the Etain Transaction was that RIV Capital paid 80% of the purchase price for Etain before obtaining regulatory approvals to operate the Etain business.

86.     However, RIV Capital and Etain received those regulatory approvals on November 21, 2022, and announced the closing of the Etain Transaction on December 15, 2022.

87.     Although this resolved one of Defendants Wild and JWAM's primary objections to the Etain Transaction, Defendants Wild and JWAM escalated their attacks on RIV Capital and Plaintiffs—confirming that Defendants Wild and JWAM's stated reasons for opposing the Etain Transaction were pretext to cover up their true objective, which was to benefit Defendant

TerrAscend by stopping the Etain Transaction and/or taking control of RIV Capital and ending its relationship with Plaintiffs.

88.     On December 20, 2022, Defendants JWAM and Wild initiated a proxy contest to try to take over RIV Capital's Board of Directors.  Defendant JWAM submitted a shareholder requisition (the "Requisition," *see* Ex. 6) requesting that RIV Capital call a special shareholder meeting for the purpose of, among other things, electing five new directors to RIV Capital's Board—just three months after shareholders elected RIV Capital's seven Board nominees.

89.     The Requisition asks shareholders to remove five members of RIV Capital's Board—including all three Plaintiff Hawthorne nominees—and replace them with Defendants' chosen nominees.

90.     On information and belief, Defendants selected their nominees with the intent that these individuals serve as Defendants' agents on RIV Capital's Board, to act on Defendants' behalf and represent their interests.

91.     The Requisition further targeted Hawthorne.  Defendants JWAM and Wild asked shareholders to "pass an advisory resolution . . . requesting the Board to establish a special committee," composed entirely of Defendants' handpicked nominees, "to investigate" Plaintiff Hawthorne "and its Board nominees."

92.     The Requisition also attempts to mislead RIV Capital's shareholders by omitting material, relevant information—in particular, Defendants Wild and JWAM's conflicts of interest through their role and investments in RIV's competitor, TerrAscend.

93.     Shareholders of RIV Capital have a right to know that the entity initiating the proxy contest has a conflict of interest, which would be material to shareholders' votes.

94.     Also on December 20, 2022, Defendant JWAM issued a press release regarding the Requisition.  *See* http://www.newswire.ca/en/releases/archive/December2022/20/c0372.html. The press release claims to take issue with (among other things) the RIV Capital Board's "self-interest."  Yet, as in the Ontario Action and in the Requisition, Defendants JWAM and Wild omitted their interests in Defendant TerrAscend and their resulting conflict of interest.

### Defendants' Common Ownership and Conflicts of Interest

95.     Defendants Wild and JWAM have common ownership interests in both RIV and TerrAscend.

96.     The United States, through the Department of Justice ("DOJ") and the Federal Trade Commission ("FTC"), has repeatedly pursued claims to prevent common ownership of competing companies from causing, or even potentially causing, anticompetitive effects.

97.     Etain competes with, plans to compete with, and/or seeks to compete with Defendant TerrAscend in the New York-New Jersey cannabis market.

98.     As a new entrant, RIV Capital also competes with, plans to compete with, and/or seeks to compete with Defendant TerrAscend in the New York-New Jersey cannabis market— both based on its stake in Etain following the Etain Transaction and based on RIV Capital's stated intent to enter the cannabis industry in the United States and in New York.

99.     RIV Capital's purchase of Etain, funded by Plaintiff The Hawthorne Collective's investment, will improve competition in the New York-New Jersey cannabis market.  The Etain Transaction and RIV Capital's provision of capital will enable Etain to double the number of Etain dispensaries open to consumers (from four to eight).  It also will allow Etain to build a new state-of-the-art cultivation facility, which will increase the supply of cannabis available to consumers and the quality of the product Etain offers.

100.     These improvements are a competitive threat to Defendant TerrAscend.  RIV Capital's entry and Etain's stronger position in the New York-New Jersey cannabis market threatens Defendant TerrAscend's current position in that market.  Moreover, Etain's stronger position makes it more difficult for Defendant TerrAscend to fulfill a long-term goal by securing a New York license and controlling the New York-New Jersey market through positions in both states.

101.     Defendants' conduct, as described herein, demonstrates that Defendants have and will continue to use Defendant JWAM's ownership interest in RIV Capital to attempt to substantially lessen competition in the New York-New Jersey cannabis market for Defendant TerrAscend's benefit.

102.     Defendant Wild has acknowledged that Defendant JWAM's dual interests in Defendant TerrAscend and RIV Capital pose a potential conflict of interest.

103.     Defendant Wild has also indicated that, in evaluating business opportunities, he prioritizes Defendant JWAM and Defendant TerrAscend over RIV Capital.

104.     Defendants' unlawful attempts to stop and unwind the Etain Transaction represent an attempt by Defendants to lessen competition for Defendant TerrAscend by stopping RIV Capital from entering the New York-New Jersey cannabis market while simultaneously weakening another competitor in Etain.

105.     Defendants' unlawful actions are likely to harm competition in the market.  If Defendants actually succeeded in unwinding the Etain Transaction, this would halt RIV Capital and Etain's plans to build four new dispensaries and a cultivation facility—an outcome that will harm competition and consumers.

106.    Upon information and belief, Defendants also hope that undoing the Etain Transaction will give Defendant TerrAscend an opportunity to acquire Etain.  This would lessen competition in the New York-New Jersey cannabis market because two direct competitors (Etain and Defendant TerrAscend) would be controlled by the same company (Defendant JWAM).

107.    Should Defendants acquire control of Etain, they will control competitors directly on either side of the New York-New Jersey border.  Given the limited number of licensed suppliers in both New York and New Jersey, Defendants will be in a position to take anticompetitive actions that would harm consumers, such as raising prices at both Etain and TerrAscend dispensaries at the same time.

108.    Even if Defendants never succeed in unwinding the Etain Transaction or subsequently acquiring Etain, Defendant JWAM's investment in RIV Capital is untenable in its current form, given the anticompetitive actions Defendants JWAM and Wild have already taken, continue to take, and have threatened to take in the future.

109.    As the FTC has recognized, an investor's common ownership interest in two competitors runs a substantial risk of one competitor providing the other with non-public, competitively sensitive information, which can increase the risk of anticompetitive unilateral or competitive behavior.  *See* Fed. Trade Comm'n, What's the interest in partial interests? (May 9, 2016), https://www.ftc.gov/enforcement/competition-matters/2016/05/whats-interest-partial-interests (last visited Feb. 6, 2023).

110.    Defendant JWAM's position as the largest shareholder of both Defendant TerrAscend and RIV Capital puts it in position to use confidential information from RIV Capital and Etain to benefit Defendant TerrAscend, a direct competitor.

111.    Defendants Wild and JWAM have already demanded confidential information from RIV Capital regarding the Etain Transaction, including any valuations of Etain, fairness opinions, and any other evidence of Etain's value used to support the Etain Transaction.  This information—if provided to Defendant TerrAscend's largest shareholder (Defendant JWAM) and the Chairman of its Board (Defendant Wild)—would allow Defendant TerrAscend to take anticompetitive actions by giving it an inside look at a direct competitor.

112.    If Defendants succeed in undoing the Etain Transaction, this confidential information would also facilitate a future attempt by Defendant TerrAscend to acquire Etain.

113.    If Defendants JWAM and Wild succeed in taking control of the RIV Capital Board, they will be in the same position—with the same ability to take anticompetitive actions—because they will control Defendant TerrAscend and its competitors in RIV Capital and Etain.

114.    Defendants JWAM and Wild have known since early 2021 that RIV Capital planned to enter the United States market by purchasing cannabis businesses.  Given Defendant JWAM's position in Defendant TerrAscend and Defendant Wild's role as the Chairman of Defendant TerrAscend's Board, Defendants JWAM and Wild have long known that RIV Capital would be a direct competitor to Defendant TerrAscend, and therefore that Defendant JWAM would hold common ownership of both companies through its position as the largest shareholder of both RIV Capital and Defendant TerrAscend.

115.    RIV Capital has recognized the conflict of interest with Defendant TerrAscend. For example, one member of RIV Capital's Board also served on Defendant TerrAscend's board. When RIV Capital and Defendant TerrAscend became competitors, RIV Capital informed this director that his dual position posed a conflict, and the director recused himself from decisions that might impact Defendant TerrAscend and left TerrAscend's Board.

116.    Defendants JWAM and Wild had several options to try to minimize any conflicts between their position in RIV Capital and their position in Defendant TerrAscend.

117.    Among other things, Defendants JWAM and Wild could have committed to giving the RIV Capital Board independence from Defendant JWAM's or Defendant Wild's business considerations or involvement and could have publicly committed to an approach that was 100% passive as to Defendant JWAM's investment in RIV Capital.

118.    Instead, Defendants JWAM and Wild have done the opposite, taking numerous steps to leverage their influence to disrupt the Etain Transaction, as well as Plaintiffs' relationship with and interests in RIV Capital.  Defendants JWAM and Wild have even initiated a proxy contest to try to take control of RIV's Board, which would enable them to promote their anticompetitive purposes to benefit Defendant TerrAscend.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Section 7 of the Clayton Act

119.    Plaintiffs hereby reallege and incorporate by reference each of the preceding Paragraphs of this Complaint as if fully set forth here.

120.    Plaintiff The Hawthorne Collective has an ongoing strategic relationship with RIV Capital, which is structured to allow RIV Capital to launch its U.S. platform and build a multistate cannabis operating and brand platform.  This relationship includes Plaintiff The Hawthorne Collective's right to nominate three members to RIV Capital's Board.

121.    In February 2021, RIV Capital announced its plans to enter into the U.S. market. Before entering the U.S. market, RIV Capital sold 100% of its interest in Defendant TerrAscend, among other companies.

122.    Defendants Wild and JWAM, as Chairman of the Board and the largest investor in Defendant TerrAscend, knew of RIV Capital's stated intentions to enter into the U.S. market.

123.    In August 2021, RIV Capital publicly announced its strategic relationship with Plaintiff The Hawthorne Collective, explaining that the relationship would allow for potential access to additional capital that would accelerate the growth of RIV Capital's platform.

124.    For Plaintiff The Hawthorne Collective, the relationship with RIV Capital allows it to explore and pursue new investment opportunities in an industry that is projected to grow substantially.

125.    Plaintiff The Hawthorne Collective and RIV Capital's strategic relationship is intended to extend beyond the Etain Transaction, which is part of RIV Capital's platform and portfolio in the northeast region of the U.S. and beyond.

126.    From RIV Capital's public announcements, Defendants knew, as early as August 2021, of the relationship between RIV Capital and Plaintiff The Hawthorne Collective—and indeed indicated knowledge of the relationship in the April 18th Letter to the RIV Capital Board.

127.    Defendants also knew and have been on notice of RIV Capital's planned expansion into the U.S. cannabis market since early 2021 and were thus aware that RIV Capital was a potential future competitor to Defendant TerrAscend.

128.    Defendants have undertaken and continue to pursue a series of anticompetitive or otherwise wrongful and improper actions to end Plaintiff The Hawthorne Collective's relationship with RIV Capital, with one purpose being to stop RIV Capital's entry into the New York-New Jersey market.

129.    Section 7 of the Clayton Act provides that "No person engaged in commerce . . . shall acquire, directly or indirectly, the whole or any part of the stock or . . . assets of another

person, where in any line of commerce . . . in any section of the country, the effect of such

acquisition may be substantially to lessen competition, or to tend to create a monopoly."  15

U.S.C. § 18.

130.    Section 7 of the Clayton Act applies not just to stock acquisitions, but also to the

continued holding of stock in a company if that holding threatens a substantial lessening of

competition in a market.  *See United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 241 (1975).

131.    The United States, through the DOJ and the FTC, has repeatedly sought to

prevent common ownership of competing companies from causing, or even potentially causing,

anticompetitive effects.

132.    Etain competes with, plans to compete with, and/or seeks to compete with

Defendant TerrAscend in the New York-New Jersey cannabis market.

133.    As a new entrant, RIV Capital also competes with, plans to compete with, and/or

seeks to compete with Defendant TerrAscend in the New York-New Jersey cannabis market—

both based on its stake in Etain through the Etain Transaction and based on RIV Capital's stated

intent to enter the cannabis industry in the United States and in the New York-New Jersey

market.

134.    Defendant JWAM's continued common ownership of stock in both Defendant

TerrAscend and RIV Capital violates Section 7 of the Clayton Act because it "may . . .

substantially lessen competition."

135.    Defendants' conduct, as described in the preceding paragraphs, demonstrates that

Defendants have used and will continue to use Defendant JWAM's ownership interest in RIV

Capital to attempt to substantially lessen competition in the New York-New Jersey cannabis

market for Defendant TerrAscend's benefit.

136.     Defendants' unlawful attempts to stop the Etain Transaction represent an attempt by Defendants to lessen competition for Defendant TerrAscend by stopping RIV Capital from entering the New York-New Jersey cannabis market while simultaneously weakening another competitor in Etain.

137.     While Section 7 of the Clayton Act may "not apply" to purchase of stock "solely" for investment, Defendants' actions have shown that Defendant JWAM's investment is *not* solely for investment.

138.     Rather, Defendants have already attempted to leverage Defendant JWAM's common ownership of Defendant TerrAscend and RIV Capital for the anticompetitive purpose of benefitting Defendant TerrAscend, by, among other things, demanding confidential information regarding the Etain Transaction and attempting to disrupt, delay, or stop the Etain Transaction from closing.

139.     Defendants have continued to leverage Defendant JWAM's common ownership by initiating a proxy war that, if successful, would result in Defendant JWAM controlling RIV Capital's Board while Defendant JWAM is TerrAscend's largest shareholder and Defendant JWAM's President, Defendant Wild, is the Chairman of TerrAscend's Board.

140.     Defendants' actions have harmed, and will continue to harm, Plaintiffs and their interest in RIV Capital.

141.     Plaintiffs are entitled to treble damages as well as attorney's fees, *see* 15 U.S.C. § 15(a).

142.     Plaintiffs also are entitled to injunctive relief, *see* 15 U.S.C. § 26.  Specifically, Plaintiffs request an order that (i) requires Defendants to cease their anticompetitive conduct, including any efforts to control, direct, or influence RIV Capital while also owning stock in

TerrAscend; (ii) requires Defendants to cease any efforts to take over RIV Capital's Board, and (iii) prohibits Defendants from using Defendant JWAM's ownership interest in RIV Capital to improperly obtain confidential information or to provide any confidential information to Defendant TerrAscend.

## SECOND CLAIM FOR RELIEF

### Section 8 of the Clayton Act

143.    Plaintiffs hereby reallege and incorporate by reference each of the preceding Paragraphs of this Complaint as if fully set forth here.

144.    Section 8 of the Clayton Act prohibits "interlocking directorates," which is the practice of one person simultaneously serving as a director or officer for competing companies. *See* 15 U.S.C. § 19.

145.    The Clayton Act defines "person" to include corporations, *see* 15 U.S.C. § 7. Section 8 thus prohibits a corporation from placing agents on the boards of competing companies.

146.    Section 8 of the Clayton Act seeks to avoid the opportunity for coordination of business decisions by competitors and to prevent the exchange of commercially sensitive information by competitors in circumstances like those present here.

147.    In an April 2022 speech, Assistant Attorney General Jonathan Kanter stated that he intends to bring more cases asserting violations of Section 8 of the Clayton Act to challenge interlocking directorates.  *See* Dep't of Justice, Assistant Attorney General Jonathan Kanter Opening Remarks at 2022 Spring Enforcers Summit (Apr. 4, 2022), https://www.justice.gov/opa/speech/assistant-attorney-general-jonathan-kanter-delivers-opening-remarks-2022-spring-enforcers (last visited Feb. 6, 2023).

148.    As described above, Defendant Wild is the President and CEO of Defendant JWAM, as well as the Chairman of Defendant TerrAscend's board.

149.    Defendants Wild and JWAM have threatened and announced an intent to engage in a proxy fight to secure control of RIV Capital's Board.

150.    Defendants' planned proxy fight, if successful, would result in a violation of Section 8 in the circumstances present here.

151.    Specifically, Defendant JWAM would have agents on the boards of two direct competitors in RIV Capital and Defendant TerrAscend.

152.    For purposes of Section 8 of the Clayton Act, RIV Capital has capital, surplus, and undivided profits aggregating more than $46 million.

153.    For purposes of Section 8 of the Clayton Act, Defendant TerrAscend has capital, surplus, and undivided profits aggregating more than $46 million.

154.    For purposes of Section 8 of the Clayton Act, RIV Capital (through Etain) had sales of more than $4.6 million for the last fiscal year in the New York-New Jersey cannabis market.

155.    For purposes of Section 8 of the Clayton Act, upon information and belief, Defendant TerrAscend had sales of more than $4.6 million for the last fiscal year in the New York-New Jersey cannabis market.

156.    Defendants' planned proxy fight, if successful, would harm Plaintiffs in multiple ways.  *First*, Plaintiffs have contractual rights related to Board membership, and Defendants' illegal attempt to take control of the Board would interfere with those rights.  *Second*, Plaintiffs have a financial interest in RIV Capital and in the Etain Transaction, and, upon information and

belief, Defendants' goal is to stop and/or impede the Etain Transaction and to end Plaintiffs'
relationship with RIV Capital.

157.   Plaintiffs are entitled to injunctive relief, *see* 15 U.S.C. § 26, to prevent
Defendants from attempting their illegal takeover of RIV Capital's board, as well as other relief
under applicable law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

a.   Declare that Defendants' attempt to take control of RIV Capital's Board
by placing their agents on the Board through a proxy contest would violate
Section 8 of the Clayton Act;

b.   Issue a permanent injunction prohibiting Defendants from attempting to
unwind the Etain Transaction or impeding the implementation of the Etain
Transaction in any unlawful manner;

c.   Issue a permanent injunction against any attempt by Defendants to remove
Hawthorne's nominees and take control of RIV Capital's Board by
installing their agents, through a proxy contest or otherwise;

d.   Issue a permanent injunction preventing Defendants from improperly
obtaining any confidential information regarding RIV Capital that would
assist Defendants in the furtherance of any anticompetitive conduct as
alleged herein, sharing any confidential information obtained with
TerrAscend or any of its agents or employees, or using such information
to TerrAscend's benefit;

e.   Award all damages, losses, attorney's fees, and costs recoverable at law;

f.   Enter judgment in favor of Plaintiffs on all counts asserted; and

g.      Grant such other relief as the Court may deem appropriate.


## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial as to all

issues triable by a jury.


Dated: February 6, 2023                          Respectfully submitted,

                                                 */s/  Peter Safirstein*
                                                 _____
                                                 Peter Safirstein
                                                 SAFIRSTEIN LAW LLC
                                                 45 N. Broad Street
                                                 Suite 100
                                                 Ridgewood, NJ 07450
                                                 917-952-9458
                                                 Email: psafirstein@safirsteinlaw.com

                                                 *Counsel for Plaintiffs*