# EXHIBIT 4

**AMENDMENT NO.1 TO
INVESTOR RIGHTS AND STRATEGIC OPPORTUNITIES AGREEMENT**

**THIS AMENDMENT AGREEMENT** (this "**Amendment**") made as of March 30, 2022,

**BETWEEN:**

**THE HAWTHORNE COLLECTIVE, INC.**, a corporation existing under the laws of the State of Ohio,

(the "**Investor**"),

- and -

**RIV CAPITAL INC.**, a corporation existing under the laws of the Province of Ontario,

(the "**Company**")

- and -

**THE HAWTHORNE GARDENING COMPANY**, a corporation existing under the laws of the State of Delaware,

(the "**Guarantor**")

**WHEREAS** the Investor, the Company and the Guarantor (the "**Parties**") have entered into an investor rights and strategic opportunities agreement dated August 24, 2021 (the "**Investor Rights Agreement**");

**AND WHEREAS** (i) the Company intends to purchase all of the issued and outstanding membership interests of Etain IP LLC, a limited liability company existing under the laws of California ("**BrandCo**"), pursuant to the terms and conditions of an equity purchase agreement (the "**Equity Purchase Agreement**") dated the date hereof between the Company and, among others, the holder of 100% of the membership interests of BrandCo (the "**BrandCo Seller**") and (ii) Allgro Holdings LLC, a limited liability company owned by one or more designees of the Company ("**Allgro**"), intends to purchase all of the issued and outstanding membership interests of Etain, LLC, a limited liability company existing under the laws of New York ("**LicenseCo**"), pursuant to the terms and conditions of a membership interest purchase agreement (the "**Membership Interest Purchase Agreement**") dated the date hereof between Allgro and, among others, the holder of 100% of the membership interests of LicenseCo (the "**LicenseCo Seller**", and together with the BrandCo Seller, the "**Sellers**") (collectively, the "**Acquisition**");

**AND WHEREAS** in connection with the Acquisition, the Company proposes to enter into an investor rights agreement (the "**Sellers' Investor Rights Agreement**"), to be dated the Initial Closing Date (as defined in the Equity Purchase Agreement), among the Company, BrandCo Seller and the beneficial owners of 100% of the membership interests of BrandCo and LicenseCo (the "**Beneficial Owners**" and together with BrandCo Seller, the "**Etain Investors**") pursuant to which the Company will grant, among other things, a right to the Etain Investors to nominate one director (the "**Sellers' Nominee**") to the Company's board of directors (the "**Sellers' Nomination Right**");

**AND WHEREAS** the Investor has had an opportunity to review the final form of the Equity Purchase Agreement, the Membership Interest Purchase Agreement and the Sellers' Investor Rights Agreement, which were provided to the Investor by the Company;

**AND WHEREAS** in connection with the granting of the Sellers' Nomination Right, the Company proposes to increase the Board Size from seven directors to nine directors (the "**Board Size Increase**");

**AND WHEREAS** pursuant to Section 2.1(k) of the Investor Rights Agreement, the Company shall not propose or resolve to increase or decrease the Board Size except with the prior written consent of the Investor;

**AND WHEREAS** the Investor has provided its consent to the Board Size Increase subject to, among other things, the Parties entering into this Amendment to amend certain provisions of the Investor Rights Agreement to effect the Board Size Increase and increase the number of Investor Nominees, so as to provide the Investor with a fourth Investor Nominee (the "**Fourth Investor Nominee**");

**AND WHEREAS** the Parties have agreed to amend the Investor Rights Agreement as provided for herein.

**NOW THEREFORE THIS AGREEMENT WITNESSES** that in consideration of the premises, the mutual covenants and agreements set forth in this Amendment and other good and valuable consideration (the receipt and sufficiency of which is hereby acknowledged by each of the Parties), the Parties hereby agree as follows:

1.    Any capitalized term used but not defined in this Amendment shall have the meaning given to it in the Investor Rights Agreement.

2.    Effective on the Initial Designation Date (as defined in the Sellers' Investor Rights Agreement), Section 2.1(a) of the Investor Rights Agreement is hereby deleted in its entirety and replaced with the following:

"(a)    The Board of Directors shall consist of no more than nine directors. Subject to Section 2.3, and provided that the Beneficial Ownership of the Investor is 33% or greater, the Investor shall be entitled to designate four nominees (each an "**Investor Nominee**") for election to the Board of Directors; provided, however, that the number of Investor Nominees will be reduced: (i) to three if the Beneficial Ownership of the Investor is at least 20% but less than 33%; or (ii) to two if (A) the Beneficial Ownership of the Investor is less than 20% and (B) the Investor satisfies the Nomination Right Ownership Requirement."

3.    Effective on the Initial Designation Date (as defined in the Sellers' Investor Rights Agreement), Section 2.1(g) of the Investor Rights Agreement is hereby deleted in its entirety and replaced with the following:

"(g)    Each Investor Nominee shall be compensated for the Investor Nominee's service on the Board of Directors and any committee thereof consistent with the Company's policies for director compensation, provided that any full-time employee of the Investor or any of its Affiliates, or of the Company or any of its Affiliates, who serves as an Investor Nominee shall not be entitled to any salary or compensation from the Company for the Investor Nominee's services as a director.

Each Investor Nominee shall be reimbursed for all reasonable expenses related to such service on the Board of Directors consistent with the Company's policies for director reimbursement."

4.    Effective on the Initial Designation Date, Section 2.1(k) of the Investor Rights Agreement is hereby amended by deleting the word "seven" and replacing it with the word "nine".

5.    Following the amendments in Sections 2 and 3 hereof becoming effective, the Company and the Board shall take all necessary action to cause the Fourth Investor Nominee to be appointed or nominated for election, as applicable, to the Board of Directors no later than the Sellers' Nominee is appointed or nominated for election, as applicable, in accordance with the Sellers' Nomination Right with the intention being that the Fourth Investor Nominee be appointed or elected to the Board of Directors, as the case may be, on the Initial Nomination Date (as defined in the Sellers' Investor Rights Agreement), provided that (a) the Fourth Investor Nominee designated by the Investor meets the qualification requirements in Section 2.2 of the Investor Rights Agreement, (b) the Investor otherwise complies with its obligations under Section 2.1 of the Investor Rights Agreement and (c) the Investor shall have no right to fill a vacancy in respect of the Fourth Investor Nominee prior to the Initial Nomination Date. The Company and the Investor hereby agree and acknowledge, unless otherwise agreed in writing by such parties, Mark Sims shall constitute one of the Investor Nominees for election at the annual general meeting of the Company's shareholders to be held in 2022.

6.    The Company agrees that it shall not permit the terms relating to the Sellers' Nomination Right included in the draft of the Sellers' Investor Rights Agreement provided to the Investor prior to the execution of this Amendment to be amended, waived, supplemented or otherwise modified in any respect adverse to the Investor, either prior to the execution of the Sellers' Investor Rights Agreement by the parties thereto or prior to the Initial Nomination Date, without the prior written consent of the Investor, such consent not to be unreasonably withheld, conditioned or delayed.

7.    This Amendment will automatically and immediately terminate, and cease to be of further force or effect, without the need for any further action by any Person, if the Equity Purchase Agreement is terminated in accordance with its terms prior to the consummation of the Initial Closing (as defined in the Equity Purchase Agreement).

8.    This Amendment is supplemental to the Investor Rights Agreement and shall form one agreement with the Investor Rights Agreement. The Investor Rights Agreement and this Amendment shall be read together and have effect as though all the provisions thereof and hereof were contained in one instrument.

9.    The Parties acknowledge and confirm that, except as specifically amended hereby, the terms and provisions of the Investor Rights Agreement remain unamended and continue in full force and effect, in accordance with the provisions thereof.

10.   Each of the Parties shall, from time to time hereafter and upon any reasonable request of any other Party, promptly do, execute, deliver or cause to be done, executed and delivered all further acts, documents and things as may be required or necessary for the purposes of giving effect to this Amendment.

11.    If any provision of this Amendment is determined by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, all other provisions of this Amendment shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Amendment so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that transactions contemplated hereby are fulfilled to the extent possible.

12.    Time shall be of the essence of this Amendment.

13.    This Amendment shall be governed by and construed and enforced in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein.

14.    This Amendment may be executed in any number of counterparts (including by email or scanned pages), with the same effect as if all Parties had signed and delivered the same document, and all counterparts shall be construed together to be an original and will constitute one and the same agreement. Electronic signatures and electronic pdf signatures (including by email or scanned pages) shall be acceptable as a means of executing such documents.

[*Signature page follows.*]

**IN WITNESS WHEREOF**, this Amendment has been executed by the Parties on the date first written above.

**THE HAWTHORNE COLLECTIVE, INC.**

by

Name: Chris Hagedorn
Title:    President

**RIV CAPITAL INC.**

by _____

Name: Matthew Mundy
Title:    Chief Strategy Officer and General Counsel

**THE HAWTHORNE GARDENING COMPANY**

by _____

Name: Chris Hagedorn
Title:    President

**IN WITNESS WHEREOF**, this Amendment has been executed by the Parties on the date first written above.

**THE HAWTHORNE COLLECTIVE, INC.**

by _____
    Name: Chris Hagedorn
    Title:   President

**RIV CAPITAL INC.**

by   *Matt Mundy*
   _____
    Name: Matthew Mundy
    Title:   Chief Strategy Officer and General Counsel

**THE HAWTHORNE GARDENING COMPANY**

by _____
    Name: Chris Hagedorn
    Title:   President

   **IN WITNESS WHEREOF**, this Amendment has been executed by the Parties on the date
first written above.

                                          **THE HAWTHORNE COLLECTIVE, INC.**


                                          by  _____
                                              Name: Chris Hagedorn
                                              Title:   President

                                          **RIV CAPITAL INC.**


                                          by  _____
                                              Name: Matthew Mundy
                                              Title:   Chief Strategy Officer and General Counsel

                                          **THE HAWTHORNE GARDENING
                                          COMPANY**

                                          by  _____
                                              Name: Chris Hagedorn
                                              Title:   President